## In re PALOMA ESTATES, Inc.
### No. 152.

Circuit Court of Appeals, Second Circuit.

Feb. 21, 1942.

CLARK, Circuit Judge, dissenting.

———◆———

Shaine & Weinrib, of New York City (Maurice L. Shaine and Edward J. Mallin, both of New York City, of counsel), for debtor-appellant.

Eugene J. Morris, of New York City (Allan Rogow, of New York City, of counsel), for Trustees of Series–C, creditor-appellees.

J. Anthony Panuch, of New York City (Chester T. Lane, Gen. Counsel, of Washington, D. C., and George Zolotar and Mortimer Weinbach, both of New York City, of counsel), for Securities and Exchange Commission.

Before L. HAND, CHASE, and CLARK, Circuit Judges.

CHASE, Circuit Judge.

The debtor which owns, subject to a first and to a second mortgage, an apartment house and lot at 200 West 86th Street in the City of New York, filed its petition for reorganization in the District Court for the Southern District of New York under Chapter X of the Bankruptcy Act, 11 U. S.C.A. § 501 et seq. The judge, holding that the petition was not filed in good faith within § 146(4) of Chapter X and also that the debtor had not complied with the general good faith requirement of our decisions in Brooklyn Trust Company v. Rembaugh, 2 Cir., 110 F.2d 838, and In re Blinrig Realty Corp., 2 Cir., 114 F.2d 100, dismissed the petition. The debtor has appealed and is supported by the Securities and Exchange Commission which, at the request of the judge, filed its notice of appearance and became an intervening party to the proceedings as provided by § 208 of the Bankruptcy Act. It has filed a brief in this court and has been heard on the oral argument. Other parties are permanent trustees appointed by the state court for holders of certificates under the first mortgage and who have appeared to contest this appeal; the second mortgagee and some unsecured creditors.

The debtor is insolvent and its serious financial difficulties are of some years standing. The first mortgage on the apartment house to which it holds title is for $2,650,000 and is of the kind known as a certificated mortgage which was guaranteed as to the payment of principal and interest by the New York Title and Mortgage Company. The certificates are part of such securities to the amount of $24,000,000 held by the above mentioned permanent trustees who are otherwise known as the Series C–2 Trustees. The second mortgage is for the face amount of $300,000 and there is admittedly due on it $60,000 or $65,000. The unsecured indebtedness is approximately $3,000. The apartment house is assessed for taxation by the City of New York at $2,630,000 and has a gross rent roll of $360,000 per year. The net rent income does not appear.

In August 1933, the Superintendent of Insurance of the State of New York, took possession, as rehabilitator, of the assets

and business of the New York Title and Mortgage Company. Following that, the Mortgage Commission of the State of New York, as successor to the Superintendent proposed a plan under the Schackno Act, Chap. 745 of the New York Laws of 1933, as amended, and the Mortgage Commission Act, Chap. 19 of the New York Laws of 1935, for the appointment of permanent trustees for the Series C–2 issue. This plan was approved by the state court on January 15, 1936, and on April 6, in the same year, the court appointed Messrs. Frank L. Weil, William E. Russell and Raymond J. Scully such trustees. They have since been acting as such and are the appellees here.

Among the assets which came into their possession were the bond and mortgage of the debtor which have previously been referred to as the first mortgage on the apartment house. There were arrears of $255,990 in interest and of $212,000 in principal. The debtor proposed to the trustees that the amount of the interest payments overdue be compromised; future amortization of the principal sum and the payment of the part in arrears be waived; the maturity date of the mortgage extended; and the interest rate reduced. The trustees approved and applied to the state court for permission to accept the debtor's offer. That permission was granted on August 7, 1936, and an extension agreement pursuant to the proposal was entered into. The maturity date of the mortgage was thereby extended to July 31, 1941, upon condition that the debtor pay interest at the rate of 4½% for two years beginning August 1, 1936; at the rate of 4¾% for two years thereafter; and at the rate of 5% for the balance of the term.

The debtor made the payments as agreed with the exception of the taxes due April 1, 1940, and the interest due May 1, 1940 and later cured both those defaults. Before any default, the debtor had had some negotiations with the trustees in respect to a modification of the extension agreement which finally took the form of an offer by the debtor to buy the mortgage for $1,700,000 payable within ninety days partly in cash and the remainder in Series C–2 certificates. The trustees sought leave of the state court to accept this offer and it was granted on July 16, 1940. The debtor then presented evidence that the mortgaged property was worth on $1,700,000 and it is evident that this valuation was accepted as fair and reasonable. The offer was duly

accepted but the debtor did not perform. On October 1, 1940, it defaulted in the payment of taxes then due. On November 1, 1940, it defaulted in the payment of interest and then notified the trustees that it was unable to purchase the mortgage as agreed. The debtor then assigned the rents to the trustees and they appointed its president agent to manage the property. Following that the debtor made another offer to buy the mortgage and informal conferences were had with the judge in charge of the proceedings in the state court in respect to it. It was not altogether satisfactory to the trustees and before any formal action was taken on it the judge died. The debtor urged the trustees to present the matter for approval to the successor judge who declined to consider it otherwise but the trustees were unwilling to accept the offer and so took no steps to obtain leave to do so.

After the rents were assigned to the trustees and the president of the debtor acted as managing agent of the property the carrying charges were not earned and the amount in arrears when the rents were assigned had been increased during the period from November 1, 1940, to May 31, 1941, to the extent of $5,902.80 making them as of June 1, 1941, $86,724.80.

With affairs in that situation the trustees removed the managing agent as of June 16, 1941, and notified the debtor of their intention to foreclose the mortgage in the state court. There has apparently been no accounting by the managing agent for the period he acted as such in June. Following the removal of the managing agent the petition for reorganization was filed in the district court.

The trustees moved to dismiss the petition as not filed in good faith for several reasons upon which they still rely. One of them was and is that "the prior proceedings in the Supreme Court of the State of New York will best subserve the interests of creditors and stockholders." The district judge after consideration reached that conclusion. This was beyond question an adequate legal ground for the dismissal for lack of filing in good faith under § 141 since it falls precisely within § 146(4) of the Bankruptcy Act and if the proof warranted the conclusion it will be unnecessary to consider any other ground for dismissal.

We think the facts well support the judge's conclusion. Though there might be a reorganization under Chap. X of the

Bankruptcy Act, the value of the debtor's property is so small compared to the amount due on the first mortgage that under Case v. Los Angeles Lumber Products Co. Ltd., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110 only the certificate holders represented by the appellee trustees could have any equity to be preserved. See, also, Consolidated Rock Products Company v. Dubois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982. There is nothing to indicate that their interests would, or could, be better protected in the district court. There would be increased expense and delay without any compensating advantages. And it would be inequitable to subject the certificate holders to such expense in time and money when their security, already inadequate, is being well applied to subserve their best interests in the prior state court proceedings. See, Chapman Bros. Co. v. Security-First National Bank, 9 Cir., 111 F.2d 86. At least, the district judge so decided and that determination is final unless clearly shown to be wrong. Tennessee Publishing Co. v. American National Bank, 299 U.S. 18, 57 S.Ct. 85, 81 L.Ed. 13; Wayne United Gas Co. v. Owens-Illinois Glass Co., 4 Cir., 91 F.2d 827.

Affirmed.

CLARK, Circuit Judge (dissenting).

Prior to this case I had been called on but once to participate in the conflict which appears to have developed in this Court between bankruptcy reorganization and state Schackno Act proceedings with regard to concerns engaged in the certificated mortgage business in New York. In re Blinrig Realty Corp., supra. There I overcame my doubts as to our emerging law because of the weakness on the facts of the case presented; indeed, we were told in argument that the district court had already dismissed the petition, notwithstanding its original approval. Now we come to another case which I find far from reassuring; and I may say the same as to In the Matter of Marine Harbor Properties, Inc., 2 Cir., 125 F.2d 296. Compare Judge Frank's powerful dissent in the latter case, as well as Judge Bright's decision, D.C.S.D.N.Y., 41 F.Supp. 814, which was reversed; also the law review criticisms, Siegel, Chapter X or Schackno Act Proceedings, 20 Corn.L.Q. 56-73; 18 N.Y.U.L.Q.Rev. 399, 418. I cannot avoid the conviction that we are substituting an inadequate state proceeding for the carefully safeguarded proceedings in reorganization devised by Congress for cases such as this, where the public interest may be protected by the public agency of the Securities and Exchange Commission. And this, it seems to me, is as practically undesirable as it is legally unjustified.

Here we have strikingly illustrated the difficulties of our present approach. Perhaps foreclosure is the best way for all, but we have no real evidence on the point save for the affidavits of the appearing parties. And these show that the trustees are now acting as dogs in the manger; for they will not present the debtor's revised plan to the state court, and that appears to be the only way it can get there. Though we cannot be sure without testimony, we can conclude that in the present state of the real estate market, a sale, even at a reduced price, might easily prove to the best interests of all, including the certificate holders. In other words, the matter ought to be before a court for decision, not left solely to the not wholly disinterested trustees.

The stress placed here upon the district judge's finding seems to me not to dispose of the problem. He made no investigation; he had before him only the affidavits now before us. And his finding is most general, merely that the trustees' defenses, formally pleaded, "are sufficient in law and sustained by the proof." Moreover, his opinion shows that he relied on our previous decisions, and was unduly concerned—as I believe we have been—in the activities of the debtor and how it may have estopped itself. This, I believe, was the initial error in Brooklyn Trust Co. v. Rembaugh, supra, since repeated in the other decisions. For the statute here pertinent, authorizing dismissal of the reorganization petition when it appears "that the interests of creditors and stockholders would be best subserved" in the prior state proceeding, Bankruptcy Act, § 146(4), 11 U.S.C.A. § 546(4), requires a definite finding as to the interests of *creditors and stockholders*, not of the debtor. I think we should limit our former precedents to make it clear that the judge must conduct the investigation thus so clearly required (wherein, too, the assistance of the Securities and Exchange Commission could be sought and might well prove invaluable), and that we should take the first step thereto in a case such as this, where the facts already disclosed seem to call so clearly for a more searching inquiry. I would reverse for a hearing on the facts.