**In re SPONSOR REALTY CORPORATION.**

District Court, S. D. New York.
Jan. 19, 1943.

736

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl and Charles Ress, both of New York City, of counsel), for debtor.

Albert W. Fribourg, of New York City (Sidney Jarcho, of New York City, of counsel), for petitioning creditors.

George Zolotar, Jacob F. Raskin, and Kiva Burke, all of New York City, for Securities and Exchange Commission.

Joseph V. McKee, of New York City (Gilbert Lazerus, of New York City, of counsel), for Title Guarantee & Trust Co.

RIFKIND, District Judge.

The issues presented by the involuntary petition and answer under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., have been tried to the court and the question is whether the petition should be approved.

The debtor is a New York corporation. It owns and operates a business building located at 3801 Broadway in the City of New York. The several portions of the building are leased to tenants. F. W. Woolworth and Company is one of the tenants and pays a substantial portion of the total rent derived from the property.

The property is encumbered by a $850,-000 first mortgage and a $70,000 second mortgage. A senior participation of $500,-000 in the first mortgage is certificated and the certificates held by the public. These certificates were sold to the public by Title Guarantee and Trust Company and guaranteed by Bond and Mortgage Guaranty Company.

The guarantor having been taken over by the Superintendent of Insurance of the State of New York, the certificated interest in the first mortgage became the subject of a plan of reorganization under the Mortgage Commission Act, Chapter 19, New York Laws of 1935, McK.Unconsol. Laws, § 4801 et seq. The plan was approved by the New York Supreme Court and Blinken, one of the petitioners, became the trustee of the senior participation for the benefit of the certificate holders.

The principal of the senior participation became due on May 1, 1933. The maturity has not been extended. The owner has had the benefit of the New York Mortgage Moratorium Law, § 1077 et seq. New York Civil Practice Act. The stipulated interest rate is 5½% per annum, payable quarter annually.

The crucial questions relate to and arise from the manner by which the debtor acquired the property practically free of cost. The purchase took place on May 22, 1942, in the manner following: From the former owner the debtor received title to the property, subject to the mortgages, for $5,000. From a nominee of the former owner, the debtor, through and in the name of a wholly owned subsidiary corporation organized for the purpose, received assignments of the second mortgage and the junior participation in the first mortgage. The price of both assignments was $50,000, which the debtor loaned to its subsidiary. The $55,000 thus expended was simultaneously obtained by the debtor from F. W. Woolworth and Company in return for a reduction of the rent reserved in its lease. This lease was for a term expiring in 1962 and provided for a rental of $25,850 per annum until April 30, 1952, and a rental of $27,850 per annum thereafter, plus a portion of the real estate taxes throughout the term. The modification granted by the debtor eliminated the tax contribution and reduced the rental reserved to $20,000 per annum for three years and to $15,000 per annum for the remainder of the term. The aggregate reduction of the rental amounts to $235,000. The only out of pocket disbursements incurred by the debtor for the acquisition of the property consisted of brokerage, counsel fees and title insurance.

The second mortgage and junior participation were modified to require payment of interest only if earned.

The conceded purpose of the arrangement whereby the mortgage assignments were taken in the name of a subsidiary was to prevent a merger of such mortgage with the fee; and the chief, if not the sole, object of preventing such merger was, if possible, to prevent the application of surplus income in excess of operating expenses to the reduction of the mortgage principal under Section 1077-c of the New York Civil Practice Act.

The petition for reorganization was filed by Blinken, as trustee, and by three certificate holders, holding mortgage certificates of an aggregate principal amount of $48,000.

Four questions call for solution. They will be treated seriatim.

1. Are the petitioners qualified to file a petition under Section 126, Bankr.Act? Section 106(1) defines "claims": "(1) 'claims' shall include all claims of whatever character against a debtor or its property, except stock, whether or not such claims are provable under section 63 of this Act [section 103 of this title] and whether secured or unsecured, liquidated or unliquidated, fixed or contingent;"

Section 106(4) defines "creditor": "(4) 'creditor' shall mean the holder of any claim;"

Section 106(8) defines "indenture trustee": "(8) 'indenture trustee' shall mean a trustee under a mortgage, deed of trust, or indenture, pursuant to which there are securities outstanding, other than voting-trust certificates, constituting claims against a debtor or claims secured by a lien upon any of its property;"

Section 126 provides: "A corporation, or three or more creditors who have claims against a corporation or its property amounting in the aggregate to $5,000 or over, liquidated as to amount and not contingent as to liability, or an indenture trustee where the securities outstanding under the indenture are liquidated as to amount and not contingent as to liability, may, if no other petition by or against such

corporation is pending under this chapter, file a petition under this chapter."

The argument that the petitioners are disqualified merely because they hold no in personam claims against the debtor manifestly does not take account of the changes effected by the Chandler Act. Under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, which has been superseded, there was room for doubt. In re Draco Realty Corp., D.C.S.D.N.Y.1935, 11 F. Supp. 405. But the language now found in the Act expresses a clear congressional intent to make not only in personam claims but claims against property sufficient to qualify a creditor as petitioner.

Congress had its attention directed at this very problem. The report of the House of Representatives (House Report No. 1409, 75th Congress, 1937, page 39) contains the following: "The provisions dealing with the right to initiate a reorganization proceeding are uncertain * * *. The use of the word 'provable' as applied to claims in the case of a creditor's petition is troublesome. The phrase 'claims against any corporation', has been construed to exclude creditors holding claims against the property of the debtor. This is unnecessarily restrictive and should be corrected."

The Senate Report (Sen. Report No. 1916, 75th Congress, 1938, page 25) makes the intention of Section 126 explicit: "Under Sec. 126. * * * Three or more creditors may bring a petition * * *. The right of creditors to file petitions is restricted to creditors holding claims which are liquidated in amount and fixed in liability. * * * These need not be claims against the debtor itself but may be claims against the property of the debtor." In re R. A. Security Holdings, Inc., D.C.E.D.N.Y.1942, 46 F.Supp. 254.

Nor is there merit in the contention that Blinken is not an indenture trustee. True he is not a conventional mortgage trustee. The statute, however, is not that narrow in its definition. He is a "trustee", under an "indenture", to wit, the "declaration of trust", executed by him under the Mortgage Commission plan of reorganization, pursuant to which there are securities outstanding, to wit, the mortgage certificates endorsed with a legend referring to the plan of reorganization, and these constitute "claims secured by a lien" upon the debtor's property. I conclude, therefore, that the trustee is a qualified petitioner.

So, too, are the individual certificate holders qualified petitioners. In re The Westover, Inc., 2 Cir., 1936, 82 F.2d 177; In re Park-83rd St. Corp., 2 Cir., 1937, 93 F.2d 295; In re Sherman Square Apartments, Inc., 2 Cir., 1937, 93 F.2d 1015, certiorari denied 303 U.S. 658, 58 S.Ct. 763, 82 L.Ed. 1117. It is suggested that these authorities are not applicable because the declaration of trust which was part of the reorganization plan approved by the State court, provided that, "No certificate holder shall have, as such, any right or power of any kind whatsoever with respect to the property * * * in the Trust Estate, all such rights and powers being vested exclusively in the Trustee". But the New York Court of Appeals in Weil v. President, etc., of Manhattan Co., 1937, 275 N.Y. 238, 9 N.E.2d 850, has severely limited the scope of the powers of a trustee holding under similar language. Absent express language to that effect, I do not assume that either the underlying state legislation or the plan of reorganization intended to deprive certificate holders of their right to petition under the Federal reorganization statute.

II. Was the debtor insolvent? I have concluded that on May 22, 1942, the real property was worth less than $500,000, the amount of the senior participation in the first mortgage and that never since has it been worth more. The only other asset owned by the debtor at the time of its acquisition of the property consisted of $500 received for all its capital stock. The question is presented whether the amount of the unassumed mortgage is deductible in determining insolvency under Chapter X. If we read Sections 106(1) and 106(6) together, an affirmative answer is indicated. And I see no reason why those definitions should not prevail under Chapter X even if some other definitions are applicable to ordinary bankruptcy, Section 102. Any other construction would not be in keeping with the legislative intent to make reorganization applicable to this type of real estate situation. The Senate Report (No. 1916, 75th Congress, 1938, page 21) declared: "Uncertainties in the present Statute with respect to technical legal distinctions have greatly impeded the reorganization of real estate mortgage bond issues, by denying creditors the right of petition in cases where the mortgaged property is held by

assignees of debtors who have not assumed the latter's debt. * * * "

■ Even if the mortgage debt be given no greater effect than to wipe out any possible "equity" in the mortgaged realty, the debtor was still insolvent since on May 22, 1942, it had already incurred liability for brokerage commissions, legal fees and insurance premiums which greatly exceeded its cash capital of $500. From that day to the date of the petition and, indeed, to the date of the trial its position has steadily deteriorated. I have been unable to construct a balance sheet of the debtor as of any date between May 22, 1942 and the date of trial, truly reflecting its assets and liabilities, which shows any net worth. The willingness of the debtor's principal stockholder to advance funds to the debtor to meet its requirements is not an asset which can be included in such a balance sheet computation. I must find the debtor insolvent.

III. Has the debtor committed an act of bankruptcy? The heart of our problem is whether the transaction described constitutes an act of bankruptcy. The petition, in compliance with the requirements of Section 131(5), alleges the first and second acts of bankruptcy as defined in Section 3, sub. a, 11 U.S.C.A. § 21, sub. a.

■ Preliminarily it should be noted, first, that the Woolworth lease was executed four years after the mortgage was created and was subject to the lien of the mortgage; and, second, that nothing in the mortgage expressly subjected the rents of the premises to the lien of the mortgage or restricted the mortgagor in the making, modifying or cancelling of leases. The mortgage contains the usual clause, assigning the rents to the mortgagee, but such an assignment does not mature until default.

If we lay aside the elaborate legal ritual by which the whole transaction was accomplished and focus attention on the business aspects it is easy to see in a true light what has been done and what are its implications. In substance, the debtor paid for the real property it purchased by parting with its right to some of the future income of the property. The portion it has surrendered is substantial. It has been put beyond the reach of the mortgage-creditors. The debtor has, thereby, materially diminished the chances that the mortgage-creditors would be paid the full amount of their claims. I am of the opinion that the debtor has committed at least the first act of bankruptcy.

■ Here, too, we have the question whether the "creditors" connoted in the phrase "hinder, delay, or defraud creditors" should be ascertained by reference to Section 1(11) or to Section 106. My view is that in a proceeding under Chapter X, the definitions of Chapter X should be employed even in reading sections of the Bankruptcy Law which have been brought into Chapter X by the general incorporating provision of Section 102. Otherwise, we should arrive at the anomaly that a creditor who was qualified to file a petition under Chapter X might nevertheless not be a "creditor" with respect to whom the debtor could entertain the intention "to delay, hinder, or defraud". The adoption of such a view would impute to Congress an intention to withdraw from claimants against property the very remedy which it is the clear purpose of Chapter X to confer. Neither the language nor the evident spirit of the statute requires a construction so discordant.

■ I am persuaded, therefore, that the certificate holders were creditors for the purpose of satisfying the requirements of the first act of bankruptcy alleged in a petition under Chapter X.

■ That there was a "transfer" to F. W. Woolworth and Company within the meaning of that word as defined in Section 1(30) cannot be doubted. Nor can there be much doubt as to the presence of the intent required by Section 3, sub. a. It is significant that $50,000 of the consideration received for the lease modification, which might have become available at least in part to mortgage creditors under Section 1077-c of the New York Civil Practice Act, was placed beyond their reach by means of a dummy corporation. The same device was designed to put a barrier between future surplus income and the mortgage creditors.

I conclude that the allegation that the debtor has, within four months of the filing of the petition, committed an act of bankruptcy has been sustained.

This conclusion is not inconsistent with City Bank Farmers Trust Company v. C. R. H. Building Corp., 1941, 286 N.Y. 633, 36 N.E.2d 683. In that case the mortgagee, in an action of foreclosure, sought to reinstate a lease, cancelled under circumstances somewhat analogous to those here

presented. On the record there made that relief was denied. Quite a different record was made here. Moreover, to sustain the allegation of an act of bankruptcy it is not necessary to find that the modification of the lease can be set aside on the complaint of creditors.

■ IV. Was the petition filed in good faith? It is suggested that petitioners' real objective is not to reorganize the debtor but to attack the validity of the lease modification. Assuming this to be true, it does not follow that the petition was filed in bad faith. It is clear that in any view of the facts the debtor has but a slight stake in the enterprise compared to that of the certificate holders. This lease is so substantial as to make all the difference between a sound mortgage and a sour one. If the only way that the creditors can protect their interest is in the reorganization court, I see no reason why access to that court should be regarded as evidence of bad faith.

■ Reference is also made to the provision of the plan of reorganization approved by the State court which authorized the trustee to apply there for further relief. But the statute under which the plan was approved in the State court was concerned not with the reorganization of corporate debtors but with the rearrangement of the rights of certificate holders in a mortgage. The relief there available is clearly not adequate to meet the circumstances of the instant case, Section 146. Marine Harbor Properties, Inc. v. Manufacturer's Trust Co., 63 S.Ct. 93, 87 L.Ed. —, November 9, 1942; Brooklyn Trust Co. v. Rembaugh, 2 Cir., 1940, 110 F.2d 838, and In re Paloma Estates, 2 Cir., 1942, 126 F.2d 72, are not authorities for the contrary view. There the debtor, by a voluntary petition, was seeking revision of the mortgage which encumbered its property, a result which it could accomplish in the State court. The petitioners here do not seek for a revision of the terms or a rearrangement of the ownership of the mortgage. They seek reorganization of the debtor, albeit one of their purposes may be to induce the reorganization trustee to attack the modification of the Woolworth lease.

■ Since all four questions have been answered in the affirmative, there is no further obstacle to the approval of the petition except the suggestion that such a decision would cause serious disturbance to well established business practices in which honest men have long engaged. The reliance of the business community upon established doctrines of law in guiding its activities should not be lightly disturbed. However, after reflection, I find no such cause for hesitation in the instant case. True, real estate owners deal with their tenants, make, renew, modify and cancel leases in confident reliance upon the proposition that, in the absence of special provisions, the mortgagee has no power to interfere prior to default. Nothing here decided need disturb that sense of security. The facts of the instant case do not fit the pattern of the normal business transaction. They reflect rather an attempt to take advantage of the rule in accomplishing a most extraordinary, and certainly not a commendable, business result. The petition is approved.