G. F. WERTIME, INC., Appellant,

v.

Alexander TURCHICK, Trustee of Kinne Equipment Co., Inc., in reorganization pursuant to Chapter X of the Bankruptcy Act, Appellee.

No. 47, Docket 27913.

United States Court of Appeals Second Circuit.

Argued Oct. 19, 1965.

Decided April 14, 1966.

Ernest B. Morris, Albany, N. Y., for appellant.

Philip R. Murray, Albany, N. Y., for appellee.

Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge:

This proceeding was commenced by the petition of Alexander Turchick, reorganization trustee of the Kinne Equipment Co. (hereinafter Kinne Co.) for an order declaring that the assignment of a mortgage from Kinne Co. to G. F. Wertime, Inc. (hereinafter Wertime) was null and void as against the trustee, that Wertime had no claim or interest in the property so mortgaged and that an unrecorded deed from Thomas H. Kinne (hereinafter T. H. Kinne) to Wertime was null and void as against the trustee. The Referee in Bankruptcy granted the petition in all respects and was affirmed, albeit on grounds differing from those chosen by the Referee, in a memorandum decision dated October 11, 1962, by Chief Judge Foley of the Northern District of New York. For reasons given hereafter we affirm the decision of the district court.

### I.

The legal puzzles presented by this case arise out of an unsuccessful attempt on the part of Kinne Co. and T. H. Kinne, the President and principal stockholder of the company that bore his name, to finance the construction of a luxurious bowling alley in upstate New York. In late February 1957 T. H. Kinne, individually, became record owner, subject to a $30,000 purchase money mortgage, of a tract in Albany County on which he planned to build the bowling alley. Construction began in March 1957 and during the spring of that year Wertime, under a contract with T. H. Kinne, provided much of the necessary labor and materials. On June 12, 1957 T. H. Kinne executed a mortgage to Kinne Co. in the face amount of $50,000 covering the real property on which the bowling alley was being constructed. Apparently this was done to give Kinne Co. additional financial stature. No consideration was paid for this mortgage, and the document remained in the possession of T. H. Kinne. By mid-June 1957 T. H. Kinne, individually, owed Wertime about $44,000 for labor and material connected with the construction of the bowling alley. To silence Wertime's insistent demands for payment T. H. Kinne gave his personal notes to Wertime which were dishonored when they were presented. Wertime then renewed its threats to file mechanics' liens. In order to induce Wertime to forbear from bringing suit or filing liens, T. H. Kinne, acting as President of the Kinne Co., executed, on July 1, 1957, an assignment to Wertime of the June 12 mortgage. It is this July 1 assignment to Wertime that has muddied the waters because it was T. H. Kinne who owed the $44,000 debt to Wertime but it was the Kinne Co. which assigned the June 12 mortgage.

The next step in this complicated financial minuet occurred on July 18, 1957, when T. H. Kinne, apparently representing himself *and* the Kinne Co., entered into an escrow agreement with Wertime. This agreement recited the mortgage assignment, stated that a deed to the premises with Wertime as grantee was to be drawn up, and further stated that this deed would be held in escrow by T. H. Kinne's attorney until the indebtedness

had been paid in full unless default occurred and in the event of default the deed was to be delivered to Wertime. The parties have stipulated that this deed was never delivered to Wertime and should be treated as a mortgage. In a separate transaction by deed dated July 26, 1957, and duly recorded on July 29, T. H. Kinne conveyed the same premises to Kinne Co., the debtor corporation.

Further financing for this ill-starred project soon became necessary; on July 29, 1957 the original purchase money mortgagees by written instrument recorded July 31, 1957, agreed to subordinate their $30,000 interest to that of a second mortgage, which Kinne Co. planned to execute with Friedericks and Meyers to secure a loan of $115,000; by instrument dated July 30, 1957 and duly recorded July 31, 1957 the debtor executed the aforesaid mortgage to Friedericks and Meyers.

It was not until September 24, 1957 at 11:24 A.M. that Wertime recorded the June 12th mortgage from T. H. Kinne to Kinne Co. and the July 1st assignment of this mortgage by Kinne Co. to Wertime. On that same day at 1:51 P.M. Robert A. Keasbey Co. filed a $3,516 mechanic's lien against the debtor. Thereafter other liens were filed. Finally, on January 23, 1958, an involuntary petition for reorganization of Kinne Co. was filed under Chapter X of the Bankruptcy Act.

## II.

■■ The major long-run goal of a Chapter X reorganization [1] is the economic rehabilitation of a particular corporate debtor so that it may continue to operate, thereby preserving at least in part the interests of creditors both secured and unsecured and, if possible, the interests of the stockholders. The finality of ordinary bankruptcy, with the attendant loss of values through forced sales, is in this way avoided. See Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 60 S.Ct.

1, 84 L.Ed. 110 (1939). Toward this end, Chapter X empowers the court in which an involuntary petition is filed to appoint a disinterested trustee, who generally is authorized to operate the business of the debtor corporation. The trustee also is authorized to prepare a plan of reorganization for submission to the court. The contents of the plan will vary according to the circumstances. In some cases, a slight alteration of the capital structure or a simple moratorium will suffice. In others, major alterations may be required with a view toward reducing all the debts and charges of the business. When the debtor corporation is insolvent and the stockholders consequently have no equity, the interest of the stockholders may be eliminated entirely. See Consolidated Rock Prods. Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982 (1941). Once completed, the reorganization plan is submitted to the court for its approval. If the plan is approved, Chapter X details a procedure whereby the interested parties may accept the approved plan. After acceptance is obtained, the court takes the remaining steps necessary to send the debtor corporation forth, cleansed, into the world. See 6 Collier, Bankruptcy (Moore ed. 1964).

■■ The foregoing adumbration of the statutory procedures, which the trustee followed in the present case, is only by way of background. The bone of contention that is the subject of this lawsuit concerns the nature of Wertime's claim against the debtor corporation. On April 7, 1958 the trustee moved for an order declaring that the assignment to Wertime of the mortgage of T. H. Kinne to the Kinne Co. was null and void as against the trustee, pursuant to subsections 60a and b of the Bankruptcy Act and Section 273, N.Y. Debtor and Creditor Law, McKinney's Consol.Laws, c. 12. A decision on the merits of this motion was not entered until after the plan of reorganization submitted to the court was ap-

---

1. Sections 106–276, 11 U.S.C. § 501–676. Hereinafter relevant provisions of the Bankruptcy Act will simply be identified in text by mention of the statutory section number.

proved.[2] The plan, however, made provision for a decision either favoring or opposing the trustee's motion; it provided that if the court ruled that Wertime held a valid mortgage Wertime was to receive long-term debentures for the full amount of its mortgage as a creditor preferred over holders of valid mechanic's liens or general claims, but if the court ruled that Wertime's putative mortgage was null and void Wertime was to be treated as an unsecured creditor and be given a substantially diminished percentage of its claim in debentures and stock. Thereafter, the Referee in Bankruptcy did rule that Section 70c of the Bankruptcy Act rendered Wertime's mortgage null and void as against the trustee. And Chief Judge Foley affirmed this decision, although he chose to rely instead on Section 70e of the Act.

The trustee, the referee, and the district court all looked to sections of the Bankruptcy Act found in Chapters VI and VII as the source of a reorganization trustee's power to avoid preferential, fraudulent, or otherwise invalid transfers of property. And a reorganization trustee does seem to possess all the powers conferred by the Act upon an ordinary bankruptcy trustee to avoid or set aside transfers, for Section 187, found in Chapter X, states that "where not inconsistent with the provisions of this chapter, a trustee, upon his appointment and qualification, shall be vested with the same rights * * * and exercise the same powers as a trustee appointed under section 44 of this Act * * *." Additionally, Section 102, also found in Chapter X, provides that all the provisions of Chapters I through VII dealing with ordinary bankruptcy shall apply in Chapter X proceedings unless an inconsistency or a conflict is made to appear. It is settled that a reorganization trustee may move to avoid a Section 60 preferential

transfer.[3] Central Hanover Bank & Trust Co. v. President and Directors of Manhattan Co., 105 F.2d 130 (2 Cir. 1939). He may invoke under Section 70c the powers and status of a creditor holding a lien by legal or equitable proceedings. Nash v. Onondaga Hotel Corp., 140 F.2d 209 (2 Cir. 1944). And he may attack under Section 70e any transfer voidable for any reason under applicable federal or state law. McGirl v. Sterling Nat. Bank & Trust Co., 102 F.Supp. 1011 (SDNY 1952). Given a reorganization trustee's power to avoid or set aside transfers under subsections 60a and b, 70c, and 70e, it remains to be decided whether any or all of these sections empowered the present trustee to void the assignment to Wertime of the mortgage of T. H. Kinne to the Kinne Co.

### III.

■ The district court held the trustee was empowered to avoid the assignment to Wertime of the mortgage of T. H. Kinne to the Kinne Co. under Section 70e of the Bankruptcy Act, which section allows a trustee to avoid any transfer affecting the bankrupt's property that is fraudulent as to a creditor under applicable state or federal law.[4] According to the lower court, Section 13(5) of the New York Lien Law would invalidate the mortgage as against the duly filed liens of creditors such as the Robert A. Keasbey Co. Section 13(5), N.Y.Lien Law, McKinney's Consol.Laws, c. 33, provides in pertinent part that:

> No instrument of conveyance recorded subsequent to the commencement of the improvement, and before the expiration of four months after the completion thereof, shall be valid as against liens filed within four months from the recording of such conveyance, unless the instrument contains a covenant by the grantor that he will receive the con-

---

2. The district court approved the plan of reorganization submitted by the trustee in June 1959. It was not until October 1962 that the district court declared that Wertime's putative mortgage interest was invalid as against the trustee.

3. As will become apparent, this rule is of special importance in the present case.

4. We assume the court below correctly rejected the ground of avoidance chosen by the referee.

sideration for such conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement * * *.

In the present case the mortgage was made and recorded after the improvement was begun, and under New York law did not become a valid mortgage until supported by consideration on July 1, Kommel v. Herb-Gner Constr. Co., 256 N.Y. 333, 176 N.E. 413 (1931); the July 1, 1957 assignment of the mortgage by Kinne Co. to Wertime did not contain the "trust fund" provision required by Section 13(5),[5] and at least one creditor—the Robert A. Keasbey Co.—filed its lien within four months of the date when the mortgage was recorded. Our court previously had construed a predecessor of Section 13(5) as evincing " * * * a definite statutory scheme to protect the liens of those mortgages which comply with the requirements, and to render invalid as against duly filed liens those which do not comply." Kyser v. MacAdam, 117 F.2d 232, 236 (2 Cir. 1941). Relying on the language of Section 13(5) and the interpretive gloss put upon this section by Kyser v. MacAdam, supra, the lower court invalidated Wertime's mortgage interest in the debtor corporation's major asset.

█ We cannot but agree with the lower court that the transaction here, whether by the participants' intention or their blunder, ought to be found to transgress the Bankruptcy Act. It is outrageous that one contractor, by taking an unrecorded mortgage from an owner known to be insolvent,[6] should be able to place himself ahead of other creditors who were lulled into false security by the contractor's failure to record. Nevertheless, apart from the question whether the state provision applies to assignments of instruments containing the required covenant, a question which we do not decide, several problems stand between us and

adoption of Judge Foley's theory that the transaction before us is voidable by the reorganization trustee under Section 70e because it failed to comply with Section 13(5), N.Y.Lien Law. First, we find some merit in appellant's contention that Section 13(5) should not be construed to make voidable a mortgage given in consideration of an antecedent debt. In a case like the one now before us the antecedent consideration for which the mortgage was assigned had already been applied by Wertime to the construction of the bowling alley; there would be little point in requiring that Section 13(5)'s "trust fund" provision be included in the assignment to Wertime because there is no realistic danger that the consideration for which the mortgage was assigned could be diverted rather than applied to the task of completing the building. Kyser v. MacAdam, supra, is not on all fours with the present case; there the original owner executed a mortgage to his general contractor but received no consideration, the contractor in turn assigned the mortgage to a third party for a cash consideration which the contractor then expended on the improvements contemplated by the owner. Section 13(5) ought to apply in such a setting because there exists the possibility that the cash consideration may be diverted. It is to protect against this possibility, according to Kyser v. MacAdam, supra, that Section 13(5) was enacted; since that possibility realistically cannot be said to exist in the present case it could be argued that Section 13(5) ought not to apply. Second, proceeding on Judge Foley's ground would force us to consider the vitality of the much criticized decision of Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931), in which the Court held that under Section 70e, if a transfer is voidable at all, it is voidable entirely. See MacLachlan, Bankruptcy, 330–35 (1956). Finally, if we follow Judge Foley's approach we would be holding that a creditor in Wertime's shoes could prevail if only it took

5. The boilerplate "Bond and Mortgage" to Kinne Co. executed by T. H. Kinne individually on June 12, 1957, did, however, contain the "trust fund" provision required by the New York Lien Law.

6. See V. infra.

pains to insure that the "trust fund" provision of Section 13(5) was incorporated in the unrecorded assignment it received. But inclusion of this provision in no way benefits unsecured creditors who are lulled into false security by the lack of recordation. We decline to rule in such a way as to permit this kind of fraud to be practiced by participants operating more smoothly than the participants here operated. For all of the above reasons we decline to adopt Judge Foley's ground of decision; this does not, however, mean we must reverse the result he reached.

### IV.

█ The real vice of the July 1 assignment to Wertime of the June 12 mortgage T. H. Kinne had given to the Kinne Co., neither of which instruments were recorded until September 24, is that the transaction constituted a preference to one of the debtor corporation's many creditors. Favoritism of one creditor by a debtor is not uncommon and usually not unlawful.[7] Section 60 of the Bankruptcy Act, however, permits a reorganization trustee to set aside certain preferences made prior to the institution of reorganization proceedings in order to insure more perfectly the economic rehabilitation of the corporate debtor.[8] We hold that a fair interpretation of Section 60 permits the trustee to void Wertime's mortgage interest in this reorganization proceeding.

Section 60a(1) of the Bankruptcy Act states that a preference avoidable by a bankruptcy or a reorganization trustee:

\* \* \* is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding

\* \* \* the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

And Section 60a(2) of the Act states that for purposes of subsections a and b of Section 60, "a transfer of real property shall be deemed to have been made or suffered when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee." Therefore, in order to hold that the unrecorded assignment to Wertime of the unrecorded mortgage T. H. Kinne had given to the Kinne Co. is a Section 60 preference, we must be able to conclude that on September 24, 1957— the date of Wertime's filing, which provided protection against a bona fide purchaser from the debtor—Kinne Co., the debtor corporation, (1) made or suffered a transfer of real property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) while insolvent, (5) within four months of the original petition under Chapter X, which (6) enabled Wertime to obtain a greater percentage of its debt than some other creditor of the same class. If the above six elements are established here, the trustee may avoid Wertime's interest in the bowling alley property under Subsection 60b of the Act if, at the time of the transfer, Wertime had reasonable cause to believe that the Kinne Co. was insolvent.

█ One's first impression is that the six necessary elements of a Section 60a preference are here present and that the only issue is whether Wertime had reasonable cause to believe Kinne Co. was insolvent when Wertime took a mortgage interest in the property. Wertime argues, however, that for two reasons the present case cannot be said to involve a Section 60a preference.[9] First, Wertime

---

7. See Abeken v. United States, 26 F.Supp. 170, 172 (E.D.Mo.1939).

8. See text accompanying note 3, supra.

9. Wertime does not dispute the presence of elements (4), (5) and (6) of a Section 60

preference even though it had every opportunity to do so. These elements therefore must stand admitted, and so, for purposes of this appeal, it is admitted that the Kinne Co. was in fact insolvent on

notes that T. H. Kinne received no consideration when on June 12 he executed the mortgage in favor of the Kinne Co. and further notes that under applicable New York law a mortgage given without consideration is a nullity. See Kommel v. Herb-Gner Constr. Co., Inc., 256 N.Y. 333, 176 N.E. 413 (1931). Wertime goes on to conclude that the first of the six necessary elements of a Section 60a preference is not present in this case because a mortgage that is a nullity cannot be considered real property and therefore the debtor corporation cannot be said to have made or suffered a transfer of real property. Second, Wertime argues that it was never the creditor of Kinne Co., the debtor corporation. Wertime admits it was the creditor of T. H. Kinne but argues that T. H. Kinne, the individual, must be distinguished from the corporation, Kinne Co. Wertime goes on to conclude that the second of the six necessary elements of a Section 60a preference is not present in this case, because it cannot be said that Kinne Co., the debtor corporation, made or suffered a transfer to or for the benefit of a creditor.[10] We have concluded that neither argument is persuasive, and for reasons stated hereafter we hold this transaction to be a preference as defined in Section 60a, which the trustee may avoid if, at the time of the transfer, Wertime had reasonable cause to believe the Kinne Co. was insolvent.

 Wertime's first argument that Kinne Co. cannot be said to have made or suffered a transfer of its real property because the mortgage it received from T. H. Kinne was in its hands a nullity, simply ignores the economic realities of the situation. Admittedly in the hands of Kinne Co. the June 12 mortgage was a

"nullity" in the sense that it would have been unenforceable by either mortgagor or mortgagee for lack of consideration. It must be recalled, however, that the real property subject to the mortgage was thereafter conveyed by T. H. Kinne to Kinne Co. by deed dated July 26, 1957, and recorded on July 29, 1957. It was not until September 24, 1957 that Wertime recorded the June 12 mortgage and July 1 assignment. As we have previously noted, Section 60a(2) states that for purposes of Subsections a and b of Section 60, a transfer of real property is deemed to have been made or suffered "when it became so far perfected that no subsequent bona fide purchase from the debtor could create rights in such property superior to the rights of the transferee." Accepting Wertime's argument that the Kinne Co. did not "make" a transfer on July 1 when it "assigned" the mortgage that was for many purposes worthless in its hands, the Kinne Co. nevertheless "suffered"[11] a transfer within the meaning of Section 60a(2) on September 24, 1957 when Wertime recorded the mortgage covering real property that the Kinne Co. then owned.

Our conclusion that the debtor corporation, Kinne Co., "suffered" a transfer of real property that may be voided by the reorganization trustee even though that transfer may have at first transferred nothing receives strong support from the decision of this court in Fischer v. Liberty Nat'l Bank & Trust Co., 61 F.2d 757 (2 Cir. 1932), cert. denied, Barker v. Fischer, 288 U.S. 611, 53 S.Ct. 403, 77 L.Ed. 985 (1933). In *Fischer* the bankrupt was serving as receiver in a sequestration suit while his own financial affairs became increasingly more hopeless. Prior to the entrance of a final decree in the sequestration proceed-

---

September 24, 1957 when it "suffered" the allegedly preferential transfer to Wertime. See text accompanying note 11, infra.

10. If the conclusion is correct it also means that in the present case there was no transfer for or on account of an antecedent debt; the third element of a Section 60a preference.

11. The provision that a preferential transfer may be "suffered" by the bankrupt enlarges the scope of transfers that may result in preferences to include transactions in which the bankrupt's part is passive. MacLachlan, Bankruptcy, 287 (1956).

ing the bankrupt assigned $9,000 of his anticipated receiver's allowance to the Liberty National Bank, a particularly insistent creditor. Shortly thereafter an involuntary petition was filed and the trustee later brought suit to recover allegedly preferential payments made to the bank pursuant to this assignment. Judge Learned Hand ruled the assignment was invalid when made, on the ground that, at common law, assignments by public officers of unearned compensation were invalid and the bankrupt did not earn his allowance as receiver until a final decree directing distribution was entered. Of course the bankrupt had both earned and received the allowance and had transferred part of it to the Liberty National Bank by the time the trustee brought suit. And this court unanimously ruled that these transfers, invalid and thus worthless when first made, were nevertheless preferences that could be set aside by the trustee. Id. at 759–760. Any other result in either *Fischer* or the present case would violate common sense.

There still remains the second string in Wertime's bow: the claim that the debtor corporation, Kinne Co., did not make or suffer a transfer to or for the benefit of a creditor because Wertime was never the creditor of Kinne Co., as distinguished from the individual T. H. Kinne.[12] To resolve this issue adequately we must turn to consider the meaning the Bankruptcy Act ascribes to the terms "claims," "creditor" and "debts."

Section 1 of the Bankruptcy Act defines the terms "creditor" and "debt" and provides that these definitions should be applied unless to do so

would be "inconsistent with the context."[13] One clear case of a contextual inconsistency must be a Chapter X reorganization proceeding because Section 106 provides that in Chapter X proceedings the terms "claims," "creditor" and "debts" shall be differently defined. And these definitions, peculiar to Chapter X proceedings, are to be employed even in reading sections like Section 60, which are made applicable in Chapter X proceedings by the general incorporation provisions of the Act.[14] See In re Sponsor Realty Corp., 48 F.Supp. 735, 739 (SDNY 1943). Therefore, in deciding whether Wertime was a "creditor" of the Kinne Co. we look to the definition of this term contained in Section 106(4) of the Act. This section says that " 'creditor' shall mean the holder of any claim." Section 106(1) states that the word "claims," when used for the purposes of Chapter X, "shall include all claims of whatever character against a debtor *or its property,* except stock, whether or not such claims are provable * * * and whether secured or unsecured, liquidated or unliquidated, fixed or contingent." (Emphasis added.) Read together, Subsections 106(1) and (4) clearly embody a more inclusive definition of the term "creditor" than applicable in ordinary bankruptcy proceedings. Foust v. Munson S. S. Lines, 299 U.S. 77, 82, 57 S.Ct. 90, 81 L.Ed. 49 (1936) (proceeding under former section 77B, the predecessor of Chapter X).[15] In particular, the statutory language makes it clear that for purposes of Chapter X corporate reorganizations one can be a creditor of the debtor even if one only holds a claim

---

12. For some inexplicable reason T. H. Kinne was never pushed into personal bankruptcy. Wertime unquestionably was a creditor of T. H. Kinne, and if an involuntary bankruptcy proceeding had been commenced with T. H. Kinne as its center of concern the problem here under discussion probably would have been solved.

13. Subsection 1(11) says that " 'Creditor' shall include anyone who owns a debt, demand, or claim provable in bankruptcy * * *" Subsection 1(14) says that " 'debt' shall include any debt, demand, or

claim provable in bankruptcy." The term "claim," which appears in both Subsections 1(11) and 1(14) is not defined for purposes of ordinary bankruptcy proceedings.

14. See text accompanying note 3 supra.

15. We do not decide whether Wertime would be a "creditor" of the Kinne Co. within the scope of Section 1(11), although the point is surely arguable. See American Sur. Co. of New York v. Marotta, 287 U.S. 513, 53 S.Ct. 260, 77 L.Ed. 466 (1933).

against the debtor's property. For example, in Brooklyn Trust Co. v. R. A. Security Holdings, Inc., 134 F.2d 164 (2 Cir. 1943), the corporate debtor had acquired title to a single piece of real property subject to an $825,000 mortgage but had never assumed any obligation to pay the indebtedness of its predecessor in title. The debtor therefore owed no obligation to the mortgagees; the mortgagees in turn had no personal claim against the corporate debtor but only a claim against the property the debtor owned. This court nevertheless held that the mortgagees were "creditors" of the debtor within Subsections 106(1) and (4) of the Act. Id. at 165.[16] Similarly, we hold that for purposes of the present corporate reorganization Wertime was a "creditor" of the Kinne Co. even though Wertime had only a claim against T. H. Kinne secured by a mortgage on property owned by the Kinne Co. and no *in personam* claim against the Kinne Co. If the mortgagees in Brooklyn Trust Co. v. R. A. Security Holdings, Inc., supra, were "creditors" as defined in Subsections 106(1) and (4) there can be little doubt that Wertime, the owner of an unperfected mortgage interest in the debtor's property, should be considered a "creditor" of the debtor for Chapter X purposes even though Wertime had no personal claim against the debtor. Of course in applying the definition of "creditor" in Chapter X to the fact situation here we are quite properly only deciding the case before us and are by no means implying that a different result would obtain if Kinne Co. had been the subject of ordinary bankruptcy. It is decidedly arguable that Wertime would be a creditor within § 1(11) as well, see American Surety Co. of New York v. Marotta, 287 U.S. 513, 353 S.Ct. 260 (1933), and bankruptcy courts have not usually been defeated by form over substance.

### V.

Each of the six necessary elements of a Section 60a preference has either been established or stands admitted in the present case. The reorganization trustee therefore should be allowed to avoid Wertime's mortgage interest in the bowling alley property under Section 60a of the Act, if Wertime at the time of the transfer had reasonable cause to believe that the corporate debtor Kinne Co. was insolvent. We hold that the undisputed facts unequivocally established that Wertime had reasonable cause to believe the Kinne Co. was insolvent when Wertime recorded the June 12 mortgage from T. H. Kinne to the Kinne Co. and recorded the July 1 assignment by the Kinne Co. of that mortgage to Wertime. During June and July of 1957 Wertime had insistently but unsuccessfully pressed T. H. Kinne for payment of his debt to it. This might be insufficient to charge Wertime with reasonable cause to believe that T. H. Kinne and the corporation that he almost solely owned were insolvent, but it does not stand alone. In order to silence Wertime's insistent demands T. H. Kinne gave his personal notes to Wertime and they were dishonored when they were presented shortly thereafter. Surely the fact that T. H. Kinne's notes were dishonored constitutes "reasonable cause," for it would have led a prudent businessman to make inquiries into the financial affairs of both T. H. Kinne and the corporation. See Mizell v. Phillips, 240 F.2d 738 (5 Cir. 1957); C. A. Swanson & Sons Poultry Co. v. Wylie, 237 F.2d 16 (9 Cir. 1956); Margolis v. Gem Factors Corp., 201 F.2d 803 (2 Cir. 1953). Wertime must therefore be charged with notice of all facts that a reasonably diligent inquiry would have disclosed. Margolis v. Gem Factors Corp., supra. It thus is chargeable with the admitted fact that the debtor corporation was insolvent on September 24 when Wertime recorded the June 12 mortgage and July 1 assignment—the time for judicial determination of "reasonable cause" because Section 60a(2) provides that the transfer was "made" on this date.

16. See Herbert V. Apartments Corp. v. Mortgage Guar. Co., 98 F.2d 662 (3 Cir.), cert. denied, 305 U.S. 640, 59 S.Ct. 107, 83 L.Ed. 412 (1938); In re Sponsor Realty Corp., 48 F.Supp. 735 (SDNY 1943).

We hold that the unrecorded assignment to Wertime of the unrecorded mortgage T. H. Kinne had given to the Kinne Co. is a preference as defined in Section 60a of the Act, which the trustee may avoid under Section 60b.

The judgment of the district court is affirmed.