In re **VENTO DEVELOPMENT CORP., Appellant.**

No. 76–1500.

United States Court of Appeals, First Circuit.

June 20, 1977.

Argued by Edelmiro Salas Garcia, Hato Rey, P.R., for appellant.

Otero Suro & Otero Suro and Robles, Torres & Trias, Hato Rey, P.R., on brief for appellees. Appellees submitted on brief.

Before VAN OOSTERHOUT,* INGRAHAM ** and CAMPBELL, Circuit Judges.

INGRAHAM, Circuit Judge.

Debtor-appellant Vento Development Corporation challenges the approval of a petition for involuntary bankruptcy and reorganization under Chapter X of the Bankruptcy Act.[1] Vento contends that (1) the petition lacked three creditors as required by 11 U.S.C. § 526, (2) the petition was not filed in good faith as required by 11 U.S.C. § 541, and (3) the findings of the district court were too cursory to receive favorable appellate treatment. We affirm.

## FACTS

Vento is a one-man corporation whose twenty shares (par value $100 per share) are owned by Mr. Félix A. Rosabal. Vento was engaged in a real estate project known as Jardines de Loíza, located in Loíza, Puerto Rico. The enterprise consisted of subdividing lots and building houses upon them. The improved lots were then sold. In 1973 Vento foundered on financial shoals and threatened to submerge completely. Continental Mortgage Investors (CMI), a Massachusetts business trust, was Vento's major creditor. On October 19, 1973, CMI, Wackenhut Corporation and Waterworks Suppliers, Inc. petitioned for the United States District Court for the District of Puerto Rico for reorganization of Vento under Chapter X. The petition outlined a bleak financial picture. Vento's only asset, the real estate development, was valued at $1,708,655. Liabilities known to the petitioners were: secured claims, $2,238,037.62, of which $1,950,960.42 was owed to CMI;

* Of the Eighth Circuit sitting by designation.

** Of the Fifth Circuit sitting by designation.

1. 11 U.S.C. §§ 501–676.

unsecured claims, $459,406.68, of which $7,460.35 was owed to Waterworks Suppliers and $5,737.20 to Wackenhut Corporation; and taxes, $51,888.81. Petitioners alleged that Vento was insolvent and/or unable to pay its debts as they became due.

Vento denied that the petition was filed in good faith. Its responsive pleadings emphatically denounced the petition as an attempt to destroy Vento. Debtor noted that it had a suit pending against CMI in the same court.[2] It claimed that the petition was yet another tactic utilized by one Durand Holladay in his struggle to wrest control of Jardines de Loíza from Vento. Vento also urged the court to hold that CMI was not a legal entity and therefore could not be counted as one of the three creditors necessary for the approval of the petition.

On June 13, 1974, Ramón Guás applied for leave to intervene as a petitioning creditor in favor of the reorganization petition. The case languished for almost two years. At some point CMI was placed in bankruptcy in the United States District Court for the District of Massachusetts. On April 21, 1976, the district court in Puerto Rico granted Guás' application to intervene. In mid-September of that year the district court held a two day hearing and on September 24 approved the petition. Vento prosecuted this appeal.

### FINDING A THIRD CREDITOR

We reject appellant's contention that there were not three creditors. First, CMI is a legal entity under Puerto Rican law. Puerto Rico Civil Code arts. 27–30, 31 L.P.R.A. §§ 101–104; *Suchem, Inc. v. Central Aguirre Sugar Co.,* 52 F.R.D. 348 (D.P. R.1971). Under F.R.Civ.P. 17(b)[3] the capacity of CMI, an unincorporated association, to sue is determined by the law of the forum state, i. e. Puerto Rico. Should there by any doubt that capacity to sue is equivalent to capacity to petition as a creditor, we note that bankruptcy, an equitable proceeding,[4] is more liberal than garden variety lawsuits with respect to parties. The bankruptcy court must protect the debtor as well as numerous creditors. Its tasks are even greater in reorganization proceedings.

> The very kernel of a reorganization proceeding is the careful consideration given to all outstanding liabilities, debts and claims. Only in the light of such an examination does it become possible for the bankruptcy court to determine whether the corporation as recapitalized can weather the financial storm. (Citation omitted.) For such an examination and such a determination to be successful, every obligation of the debtor must be brought before the eye of the court.

*American Service Co. v. Henderson,* 120 F.2d 525, 529 (4th Cir. 1941). Chapter X is more liberal with respect to counting claimants as creditors for the petition than other chapters. *Compare* 11 U.S.C. § 506(4) *with* 11 U.S.C. § 95(e); *see also G. F. Wertime, Inc. v. Turchick,* 358 F.2d 802, 811 (2d Cir. 1966). Haggling over whether an association is an entity does not obscure the fact that it is the holder of a claim. In a tax case concerning the deductibility of bad debts, Judge Mahoney of this Circuit stated:

> that a partnership or other incorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a).

**2.** Civ. No. 580–73. Apparently another case, No. 73–1144 in the Southern District of Florida, Miami Division, was transferred to the District of Puerto Rico.

**3.** Rule 17(b) provides:

> The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1)

**4.** *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 165, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

There are many meanings [attached] to such words as 'debt' or 'indebtedness', and their precise meaning in any given statute must depend upon the purpose of the statutory provision.

*Hamlen v. Welch,* 116 F.2d 413, 417 (1st Cir. 1940). The broad responsibilities of the Chapter X court demand an expansive definition of the term "creditor." This requirement has been recognized in other contexts. In *Wertime, supra,* the claim was against an individual named .T. H. Kinne, not the bankrupt Kinne Co. which he controlled. However, security for the claim was a mortgage on land owned by Kinne Co. Declining the opportunity to exalt form over substance, the court upheld the allowance of the claim in bankruptcy. 358 F.2d at 812. In another situation, a trustee was permitted to file claims in bankruptcy court for the cestui que trust. *In re Plankinton Bldg. Co.,* 135 F.2d 273 (7th Cir. 1943).[5]

Appellant's position is self-contradictory. Vento does not question its right to sue CMI, but does contest CMI's capacity to petition Vento into bankruptcy. It would be ironic if CMI, which itself has been placed in bankruptcy, could not avail itself of the same title of the United States Code in order to obtain reimbursement of sums allegedly owed it by Vento, nonpayment of which may have caused its own financial plight. We conclude that CMI may be counted as a creditor.

■ We find an alternative ground for upholding the sufficiency of the petition as to the number of creditors. Ramón Guás' intervention allows him to be counted as a creditor. The Chapter X rules allow creditors to join an involuntary petition at any time before its dismissal. Rules Bankr. Proc. 10–105(c). Intervention in all matters is generally allowed for cause. Rules

Bankr.Proc. 10–210(b). These rules took effect on August 1, 1975 and applied to all pending proceedings unless their application would be unjust or impractical. We see no reason why they should not be applied. Rule 10–105(c) merely codified existing case law. *See Canute S.S. Co. v. Pittsburgh & W. Va. Coal Co.,* 263 U.S. 244, 44 S.Ct. 67, 68 L.Ed. 287 (1923); *Guterman v. C. D. Parker & Co.,* 86 F.2d 546 (1st Cir. 1936), *cert. denied,* 300 U.S. 677, 57 S.Ct. 670, 81 L.Ed. 882 (1937); *In re Evansville Television, Inc.,* 286 F.2d 65 (7th Cir.), *cert. denied,* 366 U.S. 903, 81 S.Ct. 1048, 6 L.Ed.2d 204 (1961). The reservation in *Canute* of situations where the petition is insufficient on its face does not arise here.

■ Appellant next argues that neither CMI nor Guás may be counted because they are secured creditors. This argument was never presented to the district court and was first mentioned at oral argument.[6] It apparently stems from 11 U.S.C. § 95(e), which excludes from the number of creditors to be counted in a petition all fully secured creditors and creditors with preferences, liens, or transfers which are void or voidable. Questions of waiver aside, this argument is without merit. Section 95(e) does not apply to Chapter X proceedings. Section 506 provides special definitions for Chapter X, including a broader definition of "creditor" as the "holder of any claim." 11 U.S.C. § 506(4). The definition of "claim" in § 506(1) includes both secured and unsecured claims. It is irrelevant whether a petitioner is secured. 6 Collier on Bankruptcy (14th ed. 1940) ¶ 4.07[2] at 814 & n. 26, *citing* H.R.Rep. No. 1409, 75th Cong., 1st Sess. 41 (1937) *and* S.Rep. No. 1916, 75th Cong., 3d Sess. 25 (1938); 6 Collier, supra, ¶ 4.07[4] at 819.[7]

---

**5.** *Price v. Gurney,* 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776 (1945), does not undermine our position. In that case the shareholders of a voting trust were not allowed to file a bankruptcy petition on behalf of the trust. The alternative possibility, that the shareholders be considered as creditors of the trust, was not discussed.

**6.** Since appellees chose not to present oral argument, we have not received their views on this issue.

**7.** Even if § 95(e) were applicable, secured and preference status may be waived. The petitioner is not disqualified from being counted as a creditor; instead, compensation is delayed until the security or preference is surrendered. *Capital Tobacco Co. v. R. J. Reynolds Tobacco*

*GOOD FAITH*

 Vento heatedly alleges that the petition is part of a campaign to wrest control of the project from it. Of course, petitioning creditors have the burden of showing good faith. *Marine Harbor Properties, Inc. v. Manufacturers Trust Co.,* 317 U.S. 78, 85, 63 S.Ct. 93, 87 L.Ed. 64 (1942). The court must find that a reorganization can be effected which "avoid[s] the milking of the embarrassed debtors and the enrichment of a few professional reorganizers possessed of mischievous or hungry proclivities." *In re Diversey Hotel Corp.,* 165 F.2d 655, 658 (7th Cir.), *cert. denied,* 333 U.S. 861, 68 S.Ct. 739, 92 L.Ed. 1140 (1948). If it cannot reasonably be expected that a successful reorganization will occur, good faith is lacking. *Fidelity Assurance Ass'n v. Sims,* 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). Petitioners need not provide a specific plan in order to comply with the good faith requirement. No more is demanded of them than proof of a reasonable possibility that a plan can be formulated. *In re Bermec Corp.,* 445 F.2d 367 (2d Cir. 1971); *In re Business Finance Corp.,* 451 F.2d 829 (3d Cir. 1971). Appellant conceded at oral argument that financing would resuscitate the project. That Vento would prefer to obtain financing independent of bankruptcy supervision does not mean that the petition was not filed in good faith. Nor does it mean that reorganization cannot work. In fact, it supports the opposite conclusion.

The preliminary report of the receiver, dated November 1, 1973, noted:

> The project as of now gives the impression of complete abandonment. The streets [have] deteriorated as they were not completely finished. All lots in which there were houses under construction need cleaning and so [does] the rest of the area. . . .

From observation made of the surroundings, physical condition of the project; lack of protection and guardians, debtor negligence in protecting work in process; finished work and other assets; and complete lack of maintenance has caused work to deteriorate and is subject to loss by theft, vandalism and other natural causes, as well as the permanent menace of invasion by squatters.

Immediate attention is necessary for the protection of the assets of the debtor as well as for the continuance of the operations that will permit the completion of the project and prevent a complete loss to the estate.

There was ample evidence that inaction would have harmful effects and that action might preserve the project. A real estate appraiser predicted a profit of $103,000 in the event that the property was fully developed and sold.

Vento points to the testimony of witnesses for Wackenhut and Waterworks Suppliers as indicating bad faith. These witnesses admitted that they "just wanted [their] money back." But this is not an unnatural reaction and it is subject to varied interpretations.

 On balance, the district court was entitled to find that reorganization was reasonably possible. At least, we cannot say that this determination was clearly erroneous. *See Grubbs v. Pettit,* 282 F.2d 557 (2d Cir. 1960); *York v. Florida Southern Corp.,* 310 F.2d 109 (5th Cir. 1962), *cert. denied,* 372 U.S. 943, 83 S.Ct. 936, 9 L.Ed.2d 968 (1963); 6 Collier, *supra,* ¶ 6.02[1] at 1024 & n. 18.

*ADEQUACY OF THE FINDINGS OF FACT AND CONCLUSIONS OF LAW*

 Vento complains that the findings and conclusions of the district court were insufficient.[8] While we agree that the dis-

---

Co., 300 F.2d 755 (5th Cir. 1962) (*per curiam*); *Winkleman v. Ogami,* 123 F.2d 78 (9th Cir. 1941); *In re Gibraltor Amusements Ltd.,* 187 F.Supp. 931 (E.D.N.Y.1960), *aff'd,* 291 F.2d 22 (2d Cir.), *cert. denied,* 368 U.S. 925, 82 S.Ct.

360, 7 L.Ed.2d 190 (1961); *In re Murphy,* 225 F. 392 (D.Mass.1915).

8. The district court stated:

 . . . . the Court is satisfied and does find:

trict court could have elaborated more fully its findings and conclusions, it did find that the requirements of Chapter X had been complied with. It singled out the existence of good faith. The issues below were outlined clearly by the parties. We do not think that the district court ignored them. These findings and conclusions, although skeletal, are sufficient in this case for the purposes of appellate review.

The judgment is affirmed.

*AFFIRMED.*

3. That the involuntary petition of Continental Mortgage Investors, Waterworks Suppliers, Inc. and The Wackenhut Corporation verified the 19th day of October, 1973, complies with the requirements of Chapter X of said Act.

4. That the said involuntary petition of the petitioning creditors has been filed in good faith; and it is ORDERED, ADJUDGED, and DECREED:

5. That said petition be, and it hereby is, approved.